I hear me hear me. This honorable appellate court for the Second Judicial District is now open. The Honorable Robert D. DeClaire presiding. Please be seated. Your Honor, the current case on the docket this morning is 2-24-0714, for the people of the state of Illinois, Plaintiff's Appellee, Mr. Joey Gonzalez, defendant to the charge. Arguing on behalf of the defendant, Ms. Adrienne Sloan. Arguing on behalf of the appellee, Mr. Max C. Lewis. Thank you. Ms. Sloan, you may proceed. May it please the court. Good morning, Your Honors. My name again is Adrienne Sloan. I'm an attorney with the Office of the State Appellate Defender, and I represent Joey Gonzalez. I'd like to focus today on issues 1 and 3 of the brief, but I'm, of course, prepared to answer questions on any of the four issues. It was essentially uncontested at Joey Gonzalez's jury trial that the decedent, Jonathan DeNicolas, was trying to rob Joey. Joey's trial theory, accordingly, was that he shot DeNicolas because he needed to defend himself. Did you say he's conceited? I think so. But the jury was not allowed to hear about the true extent of DeNicolas's violent character, and was not instructed to consider whether Joey's acts were justified by his need to prevent a forcible felony. Now, you're saying that the jury didn't get to hear all of the evidence about his violent disposition, if you will. Correct? That's correct. But they did hear the evidence that he, in fact, texted somebody and said, I'm planning, I think, to put a lick on this guy, and everybody agreed that he was planning on robbing him, right? That's correct, Your Honor. Okay, so the distinction to be drawn here was while the jury did get evidence about the robbery, what the jury didn't get, which is classic second-pronged lynch evidence, was evidence that would support Joey's version of the events, which was that DeNicolas was actually shooting at Joey before this happened. How would that show that he was actually shooting at him before? So it shows his propensity to have guns and use guns. So the two pieces of evidence that were excluded was the first were text message photos that he sent to people. It's DeNicolas pointing guns at the camera. So that shows that he is an individual who really displays his guns for the purpose of being threatening. And the other text message that the court barred was him really bragging about shooting up someone's house, putting 100 holes in someone's house. So it's different. Yes, the jury heard that DeNicolas was planning to rob Joey, but this would have showed the jury about DeNicolas' violent character, which is second-pronged lynch evidence. It's not cumulative to what the court did allow, because it's the only evidence that shows that he is really someone who is prone to or consistently participates in gun violence. Don't you think they could have inferred that from the fact that he was a gang member and he was buying pot or whatever you kids call it, and he's in the car with these guys. They point a gun at him when they ask him for the marijuana. I mean, don't you think his violent nature could be inferred? And how do you think that evidence would have changed the outcome of the jury verdict? I think it would have changed the outcome of the jury verdict because it's corroborative of Joey's version of the events. So it really shows, you know, the state did contest Joey's testimony in closing arguments that DeNicolas and the other two men in the car pointed their guns at him, pointed a gun at him first. If the jury knew, look, this is a guy who brags about having guns, who brags about shooting a policeman, who brags about violence, that's indicative of his violent character. That's why lynch evidence exists in self-defense cases. And so there's really no valid reason that the court should have barred this evidence because it does, it's classic second-pronged lynch evidence. It supports the defendant's version of the facts. Well, the jury knew that he had prior felonies that involved violence, correct, the aggravated battery to the police officer as well as armed robbery, which certainly indicates something was there of a serious nature. So why, I mean, the job or the purpose of this evidence is to show not to inflame. So why would this additional evidence be necessary if we had the evidence that the jury did hear and then they could infer from? So I think the distinction that I'm trying to draw is, yes, the jury did have his priors. That's really a sanitized version of lynch evidence. This evidence, and again, armed robbery, assault of a police officer, that's not him using his guns to shoot up a house. And that's something that he bragged about doing, that he texted about doing. It's something that he did. It's something that Joey was entitled to have the jury know about to support his version of the events and to show DeNicholas' violent character. I'm sorry, go ahead. No, go ahead. Well, this house that he shot up, is it in any way related to this case? It's not, but that's not a requirement of second-pronged lynch evidence. Again, it shows his propensity to be violent. Or it could show a lot of things, but it could also be argued that it was, I can think of, it was a dare, it was a game, it was a lot of things. So how are we going to identify that it was him bragging about shooting and being a, if it took 100 shots, not a very good shot. I think what it shows is that, you know, putting 100 holes in someone's house is at the very least threatening, even to the extent that you're saying maybe he didn't actually do this. The fact that he texts people that he did, he is someone who wants people to think that he is threatening, that he is dangerous, that he is violent. So given that, you can infer that the behavior that he would have had when he was in that Audi was violent, would give rise to Joey's belief that he needed to defend himself. So even if, and I think this is where Justice Hutchinson is going as well as I'm going, even if the evidence of his propensity for violence were admitted, and the trial court improperly excluded this evidence, in light of the fact that they heard a lot of stuff so it could be cumulative, how is this not harmless error? How can you tell me, or can you tell us, that the outcome of this trial would have been any different? I believe it would have been, Your Honor. I think what was admitted was sure that he had two prior robberies. This is the jury seeing demonstrative evidence. I mean, look at the photos. He's being an extremely violent person. He's texting extremely violent things. Yeah, and they heard that. They heard the text about, bro, WTF, I'm going to try and hit this lick. The rest of it, he heard that. They heard that he was convicted of an aggravated battery of a police officer. They heard he was convicted of an armed robbery. Isn't it cumulative if you want to just say, oh, he shot up a house? And, again, how is that going to change the outcome of the jury verdict? I think it would have gave the jurors the correct impression of who DeNicholas was, and it would have contributed to their finding that Joey did have a reasonable belief in defending himself. And I think that that's especially true, not to jump around, if the jury was given the correct instructions. We're going to go to the jury instructions now. If there are more questions on the lynch evidence, I can take them. Yeah, so I really think that these two issues go hand-in-hand, and it's about Joey not having the opportunity to put on a full defense. So he did not receive the portion of the self-defense jury instruction which stated that he was entitled to defend himself to prevent the commission of a forcible felony. How long was he entitled to defend himself? In other words, are you entitled to shoot and kill someone who is running away from you, who dropped their gun or whose gun was dropped, and you keep firing at the person? It's similar to the concept of if you're a soldier and somebody raises their hands and drops their guns, are you allowed to shoot your opposing soldier, or must you allow or capture them as opposed to shooting them? There were instances of soldiers who had hand grenades on their bodies and would blow themselves up along with soldiers. Historically, what ends up happening is the question usually ends up, assuming that the death doesn't occur in a relatively short period of time, was it necessary to shoot the opponent or defend yourself in order to save yourself? There are instances of manslaughter where once the decedent is down, somebody goes and shoots the decedent again, essentially a coup de grace, and a jury finds that that's excessive. To me, some of the evidence indicates that your client empties several magazines in the general direction of the decedent. Wouldn't that be a question of fact as to whether or not he went too far, so to speak? Because he wasn't found guilty of murder, was he? He was found guilty of aggravated battery with a firearm or something like that? He was found guilty of second-degree murder. Second-degree murder, thank you. I think that the core of our argument on this point is that what you're speaking about, Your Honor, should have been for the jury to consider. So in order to get a jury instruction, it's not that Joey had to prove that he was reasonably acting to prevent a forcible felony. The jury instruction standard is that there had to be slight evidence of that. But he did get the jury instruction, just not the bracketed part, correct? He got the jury instruction. He was entitled to self-defense for his own life, but not for preventing a forcible felony. And where there's really a lot more than slight evidence here that he was acting to prevent a forcible felony. I mean, there are a lot of cases where this instruction is given and it's just the defendant's testimony. Here we have a lot more than that. We have, as we've talked about, DeNicholas sent a text message saying he was going to rob Joey, which lends itself to the notion that Joey was preventing that. We also have Flores' testimony, which is a state's witness. In opening statements, the state itself said that Flores would testify that he told him that this happened because he was being robbed. He had to do this because this was being robbed. But the defendant testified that he shot because he was afraid for his life. Did he ever testify that he had used deadly force because he needed to prevent a robbery? He never testified to that. That was certainly not the focus of his testimony, but Flores did testify that Joey had said that. And again, the standard for receiving the jury instruction is slight evidence. I'm not making a sufficiency argument here. I'm saying that he was deprived of his entitled jury instruction. And again, you only need slight evidence to get that jury instruction. I think this was extremely prejudicial because although, as we know, the jury decided that Joey didn't reasonably believe that his life was in danger, it could have found that he was justified because he was reasonably acting to prevent a forcible felony. The jury didn't have the opportunity to make that finding because his instruction wasn't offered. Ergo, there was ineffectiveness of counsel? So we argued this as plain error and also as ineffective assistance of counsel. I think something that really supports the ineffective assistance of counsel argument is that counsel did include this in a post-trial motion, which shows that he knew it was an error that he didn't have it. So it's ineffective not to ask for it during the jury instruction conference if he is going to include that as an error in the post-trial motion. If he thinks that the court should have given it, certainly he should have asked for it, and there's no valid strategic reason not to. Again, in this case where it's undisputed that a robbery was occurring at the time of the offense, the fact that jury didn't have the opportunity to consider whether he was acting to prevent this robbery was extremely prejudicial. I guess looking at it practically at that particular moment, and thank goodness I wasn't there, but what's more important, protecting your life or protecting some essentially illegal property? I would say that if the jury knew he was trying to protect his life, that would seem to be rather significant, wouldn't it? Well, if the jury knew that under the law, Joey was entitled to act to protect his life or to prevent the commission of a forcible felony against him, it would have had the opportunity to make the second finding. I mean, the jury instruction exists for a reason. That's the law. If it was following the law and if it found that he was acting to prevent a forcible felony, then it should have acquitted him. Sir? I don't have any. Any other questions? I don't. Okay, then. Your time is up. You'll have an opportunity to make rebuttals. Thank you. Mr. Booz? Yes, sir. You may proceed. If I may have a moment to arrange. Is this something you were going to reference? That's correct, Your Honor. Pseudo-demonstrative, I suppose.  Go ahead. May it please the court.  The people established that the defendant shot the victim to death in a crowded parking lot. Eyewitnesses placed him at the scene. His vehicle was tracked alongside his own person through his cell phone. And the shots at the scene, the physical evidence of the casings and bullets, all overwhelmingly established defendant's skill. Defendant, in fact, admitted to shooting at the location and presented a fantastical tale that only undermined his own defense. Under this evidence, defendant's challenge to his conviction fails because of the considerations of harmless error and prejudice. What was fantastical about it? He submitted that three individuals, all holding guns, in arm's reach, within an enclosed vehicle, allowed him to fumble with the door four times, twice inside and twice outside the window, before shooting at him as he attempted to escape, but not before, where he said that the wind pulled him out of the car, before he then traveled, according to him, underneath the truck, getting shot at the entire time, and then returned fire, still being shot at, where that truck is entirely unharmed. It is ridiculous for the jury to accept defendant's argument and testimony that it should believe him that after he himself admits he's a schemer, he thinks in four-dimensional chess or however you want to interpret his testimony, but when he submits the actual account to the jury, the holes in that account completely undermine his defense and his credibility. If there was shooting the other way, there was testimony that the shots would hit the bus at the radio station, correct? Or behind him. Yes, there was a backdrop, essentially, to this alleged return fire. Or, according to the defendant, it was the initial fire that he was returning. But, that backdrop is completely undamaged, other than a single hole, we don't know where it comes from, but it's where the truck would have been. Moreover, one bullet hole, even if you assume that's what it is, even taking that for granted, does not change the fact that that truck is entirely unharmed. We have bullets going into the Audi from the defendant. That's depicted in the pictures in this case. We know what a shot vehicle looks like. We have that evidence. We don't have any evidence supporting the defendant's case where it has to be there if he's telling the truth. There was no damage to that truck. Let's talk about the issues that your opponent raises with respect to the evidence that did not come in, and then the jury instructions. Yes, Your Honor. The evidence that did not come in, you're submitting in your brief that that's harmless error, if, in fact, it's error at all. How would that not have assisted the defendant in his self-defense case? Well, whether or not the defendant could have piled on is not the question. The question is whether the court abused its discretion when evaluating the scope of this evidence. It's not whether to admit this evidence. It was admitted. He was allowed to present a text from three days before the robbery talking about a robbery. Correct. But she's saying they weren't allowed to introduce a text that he shot some house up or bragged about the shooting. And his puffery or his bragging or peacocking to his friends about something else he did, the court evaluated that and determined that the proper scope of the lynch evidence was more proper when it related to him talking about robbing in relation to defendant. And it was properly constrained to his own criminal history, which included an armed robbery. Defendant himself emphasized this over and over in closing that the victim was a bad person, violent person. Look at his convictions. Look at how he talks to his friends. The addition of moral texts to friends or to him posing in a selfie with a firearm would not change that argument, would not affect the outcome of the case. And specifically... You submitted it's cumulative. Correct. There is nothing added to defendant's character for violence in a significant way when we already have the evidence that he has battered an officer, he has committed armed robbery, which is what defendant claims happens. I say claims because the only person who testified about what happened in that car is defendant. And he's not credible. The people don't know what happened in that car. Is there ever an issue in this case that the decedent didn't have a gun? I mean, he was one of the people with a gun, right? According to defendant, at some point. Okay. And the defendant was the only one who testified to the fact that the decedent had a gun.  All right. The only other evidence we have are the eyewitnesses who saw defendant holding a gun, a bulky man, where the gunshots are fired. This is why I presented People's Exhibit 31. We have a clear path of what happened here. The casings are in one place. The victim is in another. The pack of those bullets is all following the victim. And when the victim was down, he had no weapon on him. Correct. They didn't find another gun. They didn't find any casings from him returning fire as he ran or anything like that. There was no physical evidence supporting the idea that the victim was armed. And that supported defendant's conviction. That is why the jury found that defendant was not acting to defend his own life. Let's talk about the jury instruction. The jury instruction is given, but the bracketed section where it says robbery was not put in there. Correct. And there was some evidence, there was ample evidence of an attempted robbery. Why was that not aired? Your Honor, the instruction is that he acted with the intention to prevent a forcible felony. It is not whether a forcible felony occurred at all. It has to be his own subjective intention, and it has to be prevention. The other cases that defendant cites on this point are about punishing a defendant for committing violence while trying to escape the commission of another offense. When they talk about the length of time where this would apply. That is rooted in punishing defendants for escalating violence during the commission of offense. Defendant is now trying to say that he should be allowed to himself escalate violence and essentially lock his would-be robber into a shootout to the death. This court should not support that reading of the instruction for two reasons. First of all, it is bad policy to say, if you get robbed, if you have some kind of forcible felony, then you kill that guy. We should not be supporting that reading of it. If he is fleeing, if he is no longer engaging in the forcible felony, if there is no longer a thing to prevent, then that instruction should not apply. Well, isn't a portion of it what the defendant feels at the time? I mean, he just gets out of a car. He testifies, three guys pointing a gun at him. And he sees them kind of driving really fast after that. And is he cognizant whether or not they're going to use those guns? I mean, has he got to stop back and make sure that they're starting to shoot? I mean, I can only imagine that things are happening very quickly there from the record. I mean, at what point does he have to wait before he starts firing to defend himself? The two issues with that are, first of all, the chronology of events, and second of all, the testimony about his subjective position. First of all, he left the area, and even according to his own testimony, he was outside of the area where he had been allegedly robbed. He returned under a truck to where his compatriot, Mr. Zmaja, was, obtained a gun, and then began shooting back. Shooting back? According to the defendant, despite the total lack of physical evidence in support of that story. But I acknowledge that he still has his testimony that counts as evidence. The issue is that his subjective testimony about whether he was acting to prevent a forcible felony is entirely absent. He describes fleeing, he describes leaving, but when he is shooting that gun, there is nothing in the record at all to support his subjective intention to prevent a forcible felony. It is all about defending himself, getting back to his daughter. It's broken down more thoroughly in the briefs. But the through line, the absolute insistence through his testimony, is that he was not acting to prevent a forcible felony. He was acting to save his own life. And here, one of the issues in the case is that the defendant is functionally saying the circuit court should have locked him into a strategy that embraced both instructions. Here, the court was not required to step in in that way, and counsel was not required to present an alloyed defense of more than one theory. Counsel could have instead, it is well established that counsel is able to pursue a single theory of defense. Him insisting, I was trying to save my life. He reasonably believed that he was in danger. Yes, that is the argument he submitted below. That was a reasonable argument to make. Counsel was able to submit that and focus on that. Instead of interjecting these other potential theories and ideas in his mind, and whether or not he was going for one or the other, when he had already testified in such an incoherent fashion, the defense ability to pursue the argument only that he was acting to defend his own life was certainly worthy of affirming in this case. Well, how about, though, as your opponent indicates, that the attorney in his post-trial motion indicated that he was trying to prevent a robbery. I know he didn't testify to that. He only testified he was trying to save his life. Is it too little too late that the defense at post-trial motion says, oh, and by the way, he was trying to prevent a robbery? Defendants' regret at failing after presenting this single defense theory is not equivalent to establishing plain error or to establishing ineffective assistance of counsel. He is submitting that maybe it would have been good for me to argue this. That's not enough in this case. Moreover, as to prejudice or harmless error, either way, the evidence in support of I was trying to save my life and I thought I needed to do this or else I would be robbed more, that evidence is a circle. That Venn diagram is entirely overlapping. It is based exclusively on his testimony to insist that he had to do this. He was there. He was the only one who had a source of information that I cannot emphasize enough how much the testimony of Roberto Garcia establishing through Exhibit 211 showing that the Audi goes directly east and out of the parking lot on the top right side of this exhibit. Where he continues to shoot at? Well, the issue is defendant claims he is shooting at the Audi, that he only shoots at the Audi and never shoots at the victim at all, but the physical evidence shows that's a lie. If the Audi is going straight east, the defendant has no reason to be shooting southeast. Hence the exhibit, which I appreciate Your Honor's viewing. I don't see an indication of what is north. I believe north is up, Your Honor. It usually is. The question is what is up? This could be up. That could be up. That could be up. For purposes of the record, I am holding the page in the attitude of the People's Exhibit sticker being on the bottom right of the page. Where the exhibit label is. Is that at the bottom right? Correct, Your Honor. And the area I am referring to is as to the path of both the truck and the Audi in reverse order, would be the place cordoned off, I believe there is a car in the way, in the upper right portion, directly right of the number 22, which is where the casings were. Okay. And this wasn't taken during the event. This was taken after.  Correct. Okay. But even under defendant's theory, his testimony was that 4 is the bus, 16 is his own vehicle, and then the Audi is to the right of that, directly to the right. Passenger to passenger, he stated. They parked. Okay. Thank you. Now, for those reasons, Your Honors, I apologize. Do you have any further questions? I do not. Not yet. Do you have any questions? I have no questions. May I have leave to conclude? Yes. Thank you. Your Honors, the scope of the permitted evidence on the victim's character for violence was within the discretion of the trial court. This court should not remove trial counsel's strategic decisions for responding to a firearm identification expert, particularly on an established area of expertise. The court was not required to alter the defense strategy, nor was defense required to water down their argument by imposing a new instruction neither supported by the evidence nor affecting the outcome, and defendant has not established an affirmative showing of plain error to abuse the circuit court's discretion in sentencing. For these reasons, the people ask that this court affirm the conviction and sentence. Thank you. Thank you. Ms. Sloan, you may proceed. Thank you. I'd like to focus on the jury instruction point, if that's all right. It really feels to me that the state is arguing something now that it essentially agreed to at trial. It was in the state's opening statement that Flores would testify that Joey said he was acting to prevent the robbery. The state's now saying that there's no evidence that he was acting to prevent the robbery. The state called Flores, who testified that Joey said he did this because he was being robbed. They put on this witness. Additionally, counsel's argument that this, if the court gave this instruction, that would be the court forcing defense counsel into a theory he didn't want, it's faceless. He put this into motion for a new trial. He presumably is hoping to get a new trial where he can use this jury instruction. He wanted it. It's ineffective because he didn't ask for it. Are the aspects of this case appear to be twofold insofar as defenses are concerned? One is self-defense, and the other is to prevent a violent felony. Is that the nature and extent of it, or is there more? Well, it's two portions of his self-defense theory. No, I don't consider self-defense to relate to preventing a felony. Self-defense is defending your existence, your life force. Preventing a felony has nothing to do with whether I will live or die within the next hour or so. Understood. Now, are those the only two issues, insofar as rationales for why your client should not spend time in jail? Those are the two mitigating jury instructions. Are they mutually exclusive or not? I don't believe they were. He could have been doing both, but in this case, to the extent that the jury found that he was not reasonably acting in defense of his life, it could have still found that he was. If they aren't mutually exclusive, then that would indicate that the defense counsel was exercising strategy insofar as presentation of a defense or defenses. Again, I don't see how it can be strategy to not ask for something that you then asked for in the motion for new trial and said the court erred in giving it to you. You wanted it. You just didn't ask for it. I may agree with you, but I'm not sure that's an answer to my question. I think there's also no valid strategic reason not to ask for both prongs of this jury instruction because... Well, rather than try and lead you down a path of logic, I will attempt to get to the point, and that is, that whether or not those defenses are raised simultaneously or chronologically or based upon their relative merits as one being a greater argument or a better argument than the other, it would appear that the defense counsel exercised some discretion or exercised no discretion because he was ignorant of what was going on. So where I'm going, or trying to get eliciting some perspective from you, is where does what the attorney did or failed to do relating to failing to argue the prevention of the felony, which to a certain extent may be problematic because it would appear that the felony of attempted robbery or theft had terminated because, as I understand the evidence, the decedent was shot while he was running from the scene. And if that's the case, how does that support your argument that one needs to commit a homicide in order to prevent something that appears to be terminated, at least sufficiently such that a jury may decide that the crime for which the defendant is attempting to terminate has been terminated and, therefore, any further action on his part, especially that might result in death, is unnecessary and is an improper argument for exoneration. So I think you have two questions here. A lot. The point is that that's what I think this case boils down to, which is I'm reading the case and I'm saying to myself, what does the jury, how does the jury, or how do I think the jury rationalizes what it did? And I think that it's reasonable to assume that the jury decided that the person wasn't defending himself and he wasn't attempting to prevent the crime, and why is that? Because the decedent appears to be withdrawing from the incident or the transaction, and if that's the case, then it's within the province of the jury's authority, prerogative, to come up with the verdict that they did. I think you're absolutely right that it should have been within the province of the jury to make that finding. The jury didn't have the opportunity to consider whether he was reasonably acting to prevent a forcible felony because they didn't get that portion of the instruction. I think that the problem is I'm not making a sufficiency argument. I'm saying that Joey did not receive a fair trial because the jury wasn't even instructed on whether he was acting reasonably to prevent a forcible felony. So you're claiming an error. Now, claiming the error, you have to claim that it's prejudicial. And I think certainly it is prejudicial because if this question went to the jury, the jury could have found, sure, maybe he didn't have to do this because his life was in danger, but the law says he can also act to prevent a forcible felony. Joey had the right for his jury to consider whether he was doing that. And again, the standard is so low for a jury instruction. It's that there's slight evidence. There's more than slight evidence. There's so many cases where this instruction is given just based on the defendant testifying. It's a low bar for a jury. Would you agree that it's an uncontested fact that the withdrawal of the decedent occurred simultaneously insofar as a factual scenario or factual scenarios are concerned that indicated that for purposes of the arguments made on behalf of the defendant, established that the transaction terminated within very close, if not simultaneous, proximity to the issue of whether or not he was defending himself vis-a-vis whether or not he was preventing a felony? I would not agree that it's an undisputed fact that the robbery was over at the time that Joey was running the place. Well, what happens if we decide that it did, then do we not determine that any error was harmless? I don't think that the facts support that. I don't think that the facts support that there was not even slight evidence that Joey was acting to prevent the commission of a forcible felony. I don't think that that finding would be appropriate. Again, I think the problem we're having here is that I think counsel is trying to make a sufficiency argument when I'm raising new trial issues. The trial facts that are damaging to Joey doesn't mean that the trial court can bar lynch evidence that was admissible under the law. The trial facts that counsel is pointing to doesn't mean that Joey shouldn't get an instruction that's appropriate under the law. Everyone deserves a fair trial, and if he's not being allowed to admit evidence that's admissible, and if he's not getting the jury instructions he's entitled to, that's not a fair trial. And that's the reason we're asking for a new one. Thank you. Thank you. I didn't have anything. Oh, does that mean we've gone over the time? Yes. That means you went over for four minutes and 48 seconds. You were talking when the buzzer went off. Sorry about that. We'll take the case under advisement and take a short recess. Thank you. All rise.